IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JOE HILL, III                              §
     TDCJ-CID #1336144         §
v.                                         §            C.A. NO. C-11-127
                                 §
JARROD J. HENRY, ET AL.                    §

## MEMORANDUM AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ"), and he is currently incarcerated at the McConnell Unit in Beeville, Texas.  Proceeding pro se, he filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.  (D.E. 1).  Pending is Defendants' motion for summary judgment.  (D.E. 34). Plaintiff has filed responses opposing dismissal of his action.  (D.E. 37, 38).  For the reasons that follow, it is respectfully recommended that Defendants' motion for summary judgment be granted in part and denied in part.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.  PROCEDURAL BACKGROUND

On April 18, 2011, Plaintiff instituted this action against various prison officers at the McConnell Unit.  (D.E. 1).  A Spears[1] hearing was conducted on May 25, 2011.  Service was ordered on Defendants Jarrod Henry, Elias Carabajal, Michael Aleman, Abram Arroyos, and

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

Jaqulyn Jameson.[2]  (D.E. 11, 27).  Defendants Henry, Aleman, Arroyos, and Jameson filed their answer on July 11, 2011, (D.E. 13), while Defendant Carabajal filed his answer on October 27, 2011.[3]  (D.E. 31).

Defendants submitted their summary judgment motion on February 21, 2012, (D.E. 34), which was subsequently supplemented on February 23, 2012.  (D.E. 35).  Plaintiff filed a response on March 7, 2012, (D.E. 37), which included a statement of disputed factual issues. (D.E. 38).

### III.  PLAINTIFF'S ALLEGATIONS

Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by either using excessive force against him or being deliberately indifferent to such use of excessive force.  Specifically, he alleges that, without provocation, Defendants Henry, Aleman, and Carabajal brutally attacked him while he was in handcuffs. (D.E. 1, at 4).  Defendant Arroyos was present during the assault and either assisted the others or failed to intervene.  Id.  After the incident, Plaintiff asserts that Defendant Jameson laughed at him while he was being treated for his injuries at the infirmary.  Id.

### IV.  SUMMARY JUDGMENT EVIDENCE

Defendants offer the following documents in support of their motion for summary judgment:

Exhibit A:     TDCJ Grievance #2010118036, with attached business records affidavit;

Exhibit B:     TDCJ Grievance #2010128391, with attached business records affidavit;

---

[2] Plaintiff specifically named "Captain Jamison" as a defendant to this dispute.  (D.E. 1, at 1, 3).  As evidenced by Defendant Jameson's affidavit, (D.E. 34-9, at 2), that spelling is incorrect.

[3] Plaintiff initially named "Brian J. Carabajal" as a defendant to this dispute.  (D.E. 1, at 1, 3).  After determining that he intended to sue "Elias Carabajal," the Court dismissed Brian Carabajal from the action.  (D.E. 33).

Exhibit C:     TDCJ Grievance #2010133839, with attached business records affidavit;

Exhibit D:     TDCJ Major Use of Force Report #MA-01294-03-10, including DVD copy of use of force video and CD copy of still pictures, with attached business records affidavit;

Exhibit E:     Affidavit of Jarrod Henry;

Exhibit F:     Affidavit of Abram Arroyos;

Exhibit G:     Affidavit of Elias Carabajal;

Exhibit H:     Affidavit of Michael Aleman;

Exhibit I:     Affidavit of Jacqulyn Jameson.

(D.E. 34, 35). Plaintiff relies on the facts alleged in his pleadings, at the <u>Spears</u> hearing, and in his brief opposing Defendants' summary judgment motion, all of which were declared true under penalty of perjury. (D.E. 1, 37). He has also included an affidavit from Alfonzo C. Wallace, another inmate at the McConnell Unit who purportedly witnessed the entire incident. (D.E. 38-1).

To the extent that the parties do not disagree on the material facts forming the basis of this action, the summary judgment evidence, including the Plaintiff's testimony at the <u>Spears</u> hearing, establishes the following:

On the night of March 10, 2010, Plaintiff appeared before Defendant Arroyos at "A-Turnout" for a minor disciplinary hearing. (D.E. 34-6, at 2). Defendant Henry was also on duty at A-Turnout at that time. <u>Id.</u>; (D.E. 35-1, at 2). After Defendant Arroyos determined that Plaintiff was guilty and announced the disciplinary punishment, a struggle then ensued and both Defendants Arroyos and Henry applied force to subdue Plaintiff. (D.E. 34-4, at 7; D.E. 34-6, at

2; D.E. 35-1, at 2).  Additional officers were called to the scene, and Defendant Carabajal assisted by applying force as well.  (D.E. 34-7, at 2).

Immediately thereafter, Plaintiff was taken to the infirmary for an examination.  (D.E. 36).  The health care provider observed that he had a contusion to his right brow and superficial abrasions to the right upper lip.  (D.E. 34-2, at 16).  Defendant Henry was also treated for an abrasion to his forearm from the physical struggle.  (D.E. 34-4, at 29-30; D.E. 35-1, at 2-3; D.E. 36).

Following this incident, Plaintiff was notified on March 15, 2010 that he was being charged with "striking [Defendant Henry's] right shoulder with closed [sic] fist with his right hand."  (D.E. 34-2, at 9).  At the disciplinary hearing held on March 26, 2010, he was found guilty as charged.  Id.  He was assessed thirty days loss of recreation privileges, a reduction in line class, and thirty days loss of good-time credit.  Id.

Plaintiff submitted his first Step 1 grievance on March 11, 2010, alleging that Defendants used excessive force during the incident.  (D.E. 34-1, at 4).  He recounted being upset with Defendant Arroyos' finding of guilt and using profanity before walking away.  Id. at 3.  Upon hearing the profanity, Defendant Arroyos secured Plaintiff's arms with handcuffs and told Defendant Henry to take him away.  Id.  When Plaintiff complained to Defendant Henry that he was being too aggressive, he was thrown to the floor face-first.  Id.  As other officers joined the use of force, he described being pummeled by a barrage of limbs despite his pleas for them to stop.  Id.  He also heard officers laughing during the ordeal.  Id.  On March 16, 2010, Warden Jackson responded by including the grievance with the use of force report for further review.  Id. at 4.  After Plaintiff submitted a Step 2 grievance requesting that Defendants be disciplined for

4

their actions, Assistant Regional Director Garcia found that "[n]o further action [was] warranted" because inmates are not permitted to request disciplinary measures be taken against prison officers.  Id. at 6.

With respect to the disciplinary proceeding, Plaintiff submitted a Step 1 grievance on March 29, 2010 in order to appeal the finding of guilt.[4]  (D.E. 34-2, at 4).  He argued that the officers filed a false report and claimed that no evidence of Defendant Henry's injury was presented.  Id. at 3-4.  This grievance was denied on April 13, 2010 by Warden Jackson because there was insufficient evidence to support a guilty finding.  Id. at 4.  Plaintiff's Step 2 grievance, which was filed on April 26, 2010, was also rejected by Cheryl Lawson for the same reason.  Id. at 6.

## V.  DISCUSSION

Defendants move for summary judgment on the basis that Plaintiff's claims remain partially unexhausted and are barred by both the Heck doctrine as well as the doctrine of qualified immunity.  (D.E. 34, at 3).  In addition, they contend that his constitutional claims are without merit.  Id. at 8-12.

## A.    The Legal Standard For A Summary Judgment Motion.

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and

---

[4] An earlier Step 1 grievance appealing the disciplinary conviction was filed on March 9, 2010.  (D.E. 34-3, at 4).  This grievance was denied by Warden Jackson on May 8, 2010, and no Step 2 grievance appealing this decision was ever filed.  Id.

admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp.,

278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

        The party seeking summary judgment bears the initial burden of demonstrating the

absence of a genuine issue of material fact and informing the court of the basis for its motion by

identifying those portions of the pleadings, depositions, answers to interrogatories, admissions

on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992) (citations

omitted).  Any controverted evidence must be viewed in the light most favorable to the non-

movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l

Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988)

(citation omitted).

        If the moving party makes the required showing, then the burden shifts to the non-movant

to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, Tex., 922 F.2d

1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the

allegations of the pleadings, but must establish that there are material controverted facts in order

to preclude summary judgment.  Fed. R. Civ. P. 56(c)(1); Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails

to make a showing sufficient to establish the existence of an element essential to his case on

which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc.

v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.      Plaintiff Failed To Properly Exhaust His Administrative Remedies Against Defendant Jameson.**

Defendant Jameson asserts that Plaintiff has not exhausted any potential claim against her.  In the Prison Litigation Reform Act, Congress mandated that inmates must exhaust their administrative remedies prior to filing civil rights actions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002); accord Irby v. Nueces Cnty. Sheriff, 790 F. Supp. 2d 552, 557 (S.D. Tex. 2011) (citations omitted).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001); accord Irby, 790 F. Supp. 2d at 557 (citations omitted).  The Supreme Court has clarified that a prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 93 (2006); accord Irby, 790 F. Supp. 2d at 557 (citing Woodford).  However, an inmate's failure to exhaust is an affirmative defense that must be raised by the defendants.  See Jones v. Bock, 549 U.S. 199, 216 (2007); accord Irby, 790 F. Supp. 2d at 557 (citing Jones).

The purpose of the exhaustion requirement is to alert jail officials to problems so that the prison has a chance to address the claims before they reach federal court.  Woodford, 548 U.S. at

7

94. As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

    In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  The court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'"  Id. at 516 (citations omitted); accord Wilbert v. Quarterman, 647 F. Supp. 2d 760, 766 (S.D. Tex. 2009) (citation omitted).  In addition, the nature of the complaint will influence how much detail is necessary.  Johnson, 385 F.3d at 517; Wilbert, 647 F. Supp. 2d at 766 (citation omitted).  For example, a complaint about a correctional officer should identify a specific person, whereas a complaint about a prison condition might not need to identify any individual.  Johnson, 385 F.3d at 517; Wilbert, 647 F. Supp. 2d at 766 (citation omitted).

    The TDCJ provides a two-step procedure for presenting administrative grievances.  Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam) (citation omitted).  An inmate properly exhausts a claim by presenting it in Step 1 and Step 2 grievances.  See Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy ¶ IV (Jan. 31, 1997)).  A claim must be pursued through both grievance steps before it can be considered exhausted.  Johnson, 385 F.3d at 515 (citing Wright, 260 F.3d at 358).

    Plaintiff alleges that Defendant Jameson laughed at him while he was being treated for his injuries at the infirmary.  (D.E. 1, at 4).  In response, she seeks dismissal of this claim because he failed to mention her in any grievance concerning the underlying incident.  (D.E. 13,

at 2; D.E. 34, at 5).  The administrative grievance records submitted by both parties confirm Defendant Jameson's contention that Plaintiff never exhausted his claim against her.  Not only did he fail to mention her in any of his grievances by name, none of his grievances contain any references to events that occurred after the alleged assault, including his treatment at the infirmary.  Therefore, prison officials could not have known that Plaintiff also had a problem with Defendant Jameson or any other officer who did not apply force on him during the incident.  See Johnson, 385 F.3d at 517 (citing with approval the Sixth Circuit's holding in Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001) that "a grievance specifically complaining of a beating at the hands of one guard did not suffice to exhaust a failure-to-protect claim against another guard, not mentioned in the grievance, who stood by and watched").

Although exhaustion is not required when the remedy sought is not "available," Booth, 532 U.S. at 736 & n.4; accord Dillon v. Rogers, 596 F.3d 260, 267 (5th Cir. 2010), Plaintiff has not even attempted to make any such showing.  On the face of it, there is no compelling reason for why an administrative remedy was not "available" to him given that he has properly submitted grievances against other Defendants in this action.  Accordingly, it is respectfully recommended that Plaintiff's claim that Defendant Jameson laughed at him when he was being treated for his injuries in the infirmary remains unexhausted.[5]

---

[5] In the alternative, it is also respectfully recommended that Plaintiff's claim against Defendant Jameson implicates no constitutional right.  He has specifically denied that she physically assaulted him, and he only asserts that she laughed at him while he was being treated.  Nevertheless, the mere fact that Defendant Jameson laughed at him would not be sufficient to support a constitutional violation.  See Peyton v. Rucker, 101 F. App'x 982, 983 (5th Cir. 2004) (per curiam) (unpublished) (allegation that a defendant laughed at plaintiff did not amount to a constitutional violation actionable pursuant to § 1983) (citing Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002)).

**C.      Plaintiff's Challenge Of His Disciplinary Proceeding Is Barred By <u>Heck v.</u>**
         **<u>Humphrey</u>.**

As a result of a disciplinary proceeding relating to the underlying incident, Plaintiff was

subject to a punishment of thirty days loss of recreation privileges, a reduction in line class, and

the revocation of thirty days of good-time credits.  (D.E. 34-2, at 9).  He seeks to have this

disciplinary case reversed through this action.  (D.E. 1, at 4).  Defendants counter that such relief

is barred by the doctrine enunciated by the Supreme Court in <u>Heck v. Humphrey</u>, 512 U.S. 477

(1994).  (D.E. 34, at 5).

The <u>Heck</u> Court held that "in order to recover damages for allegedly unconstitutional

conviction or imprisonment, or for other harm caused by actions whose unlawfulness would

render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or

sentence has been [overturned]."  <u>Heck</u>, 512 U.S. at 486-87.  The Fifth Circuit has explained that

"[i]t is well-settled under <u>Heck</u> that a plaintiff who has been convicted of a crime cannot recover

damages for an alleged violation of his constitutional rights if that 'violation arose from the same

facts attendant to the charge for which he was convicted....'"  <u>Bush v. Strain</u>, 513 F.3d 492, 497

(5th Cir. 2008) (quoting <u>Heck</u>, 512 U.S. at 486-87).  Thus, unless "the factual basis for the

conviction is temporally and conceptually distinct from the excessive force claim," a plaintiff

must show that his conviction has been overturned in order to pursue a § 1983 claim.  <u>Id.</u> at 498.

The <u>Heck</u> doctrine also operates to bar prisoners from challenging the punishment imposed by a

disciplinary proceeding through a § 1983 action.  <u>See</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 648

(1997) ("[plaintiff's] claim for declaratory relief and money damages, based on allegations ...

that necessarily imply the invalidity of the punishment imposed, is not cognizable under §

1983"); <u>Clarke v. Stalder</u>, 154 F.3d 186, 189-91 (5th Cir. 1998) (en banc) (applying <u>Heck</u> to bar

plaintiff's constitutional claims that were fundamentally intertwined with his request for restoration of good-time credits).

After a disciplinary proceeding, Plaintiff was sanctioned for "striking [Defendant Henry] with a closed fist with his right hand," (D.E. 34-2, at 9), and he has not alleged that this conviction was overturned.  He does, however, premise this entire action on a diametrically opposed set of facts in which he portrays Defendant Henry as the aggressor and himself as the innocent party.  (D.E. 1, at 4).  To the extent that his excessive force claim <u>necessarily</u> involves the reversal of the hearing officer's decision and the restoration of good-time credits, it is precluded by <u>Heck</u> and <u>Edwards</u>.  <u>See</u> <u>Orange v. Ellis</u>, 348 F. App'x 69, 72 (5th Cir. 2009) (per curiam) (unpublished) ("Where a judgment in favor of the plaintiff-even in a prison disciplinary proceeding-necessarily implies the invalidity of his conviction or sentence, a prisoner's claim for damages is not cognizable.") (citing <u>Edwards</u>, 520 U.S. at 643).

On the other hand, the Supreme Court has clarified that <u>Heck</u> "is not ... implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."  <u>Muhammad v. Close</u>, 540 U.S. 749, 751 (2004) (per curiam).  Where a prisoner's § 1983 action "raise[s] no claim on which habeas relief [can be] granted on any recognized theory, ... <u>Heck</u>'s favorable termination requirement [is] inapplicable."  <u>Id.</u> at 755.  In effect, the Supreme Court held that an action not involving the expungement of a disciplinary conviction or the restoration of good-time credits "could not ... be construed as seeking a judgment at odds with ... the State's calculation of time to be served in accordance with the underlying sentence."  <u>Id.</u> at 754-55.  In applying <u>Muhammad</u>, the Fifth Circuit's practice has been to sever claims barred by <u>Heck</u> from viable constitutional claims that do not constitute a challenge of a

disciplinary proceeding.  See Mosley v. White, No. 09-41091, 2010 WL 8497638, at *4 (5th Cir.

Dec. 13, 2010) (per curiam) (unpublished) (finding that district court erred when determining

that excessive force claim was barred by Heck and Edwards because "[s]uccess in the instant

action would not affect the validity of [plaintiff]'s underlying conviction or the duration of his

sentence") (citing Muhammad, 540 U.S. at 751 & n.1)); Mahogany v. Stalder, 242 F. App'x 261,

263 (5th Cir. 2007) (per curiam) (unpublished) (dismissing plaintiff's claim "to the extent that he

sought restoration of good-time credits, reversal of the disciplinary board's decision, and

expungement of the disciplinary proceedings from his record" but ordering remand for

consideration of claims that "stem solely from 'the deprivation of civil rights'") (quoting Heck,

512 U.S. at 482-83, 487 n.7).

Contrary to Defendants' assertion, (D.E. 34, at 10-11), the Heck doctrine does not

preclude a merits consideration of an excessive force claim that happens to use facts on which a

disciplinary conviction was based.  Plaintiff does not solely base this action on reversal of the

disciplinary conviction.  Because he has also requested legal and equitable remedies for

Defendants' alleged violation of his constitutional right to be free from cruel and unusual

punishment, success in this action does not necessarily threaten to unsettle the duration of his

confinement.  Accordingly, it is respectfully recommended that Plaintiff's claims be found to be

Heck-barred only insofar as he seeks to secure the restoration of good-time credits, reversal of

the disciplinary board's decision, and expungement of the disciplinary proceedings from his

record.

**D.      Defendant Michael Aleman Was Not Personally Involved In The Alleged Assault.**

It is well established that "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citing Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976)). Thus, to state a cause of action under § 1983, the plaintiff must allege facts reflecting each defendant's participation in the alleged wrong, "specify[ing] the personal involvement of each defendant." Murphy v. Kellar, 950 F.2d 290, 292 (5th Cir. 1992).

In Plaintiff's original complaint, he specifically named "Michael A. Aleman" as a defendant to this action. (D.E. 1, at 1, 3). However, Defendant Aleman has denied involvement in the alleged assault and further testified via affidavit that "[o]n March 20, 2010, I was not on duty at the time or place described by [Plaintiff] in his complaint." (D.E. 34-8, at 2). In addition, the TDCJ's use of force reports, (D.E. 34-4, at 7), as well as the affidavits of Defendants Arroyos and Henry, (D.E. 34-6, at 2; D.E. 35-1, at 2), all reference the participation of "Julian Aleman" in the effort to subdue Plaintiff. Most significantly, Julian Aleman provided a witness statement included in the TDCJ's use of force report confirming his involvement in the fracas. (D.E. 34-4, at 25-26). Defendant Michael Aleman's name is found nowhere in these documents.

Plaintiff does not appear to seriously contest the possibility that he may have sued the wrong person. In his brief opposing summary judgment, he only responds that "Michael Aleman's name was used in the discovery from [D]efendants, now they say such [sic] is not him." (D.E. 37, at 2). While it is unclear what "discovery" provided by Defendants affirmatively designated Michael Aleman as the proper defendant, the evidence in the record conclusively demonstrates that Defendant Michael Aleman was not part of the alleged attack on

Plaintiff.  See Anderson, 477 U.S. at 252 ("the judge must ask himself ... whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented").  Therefore, it is respectfully recommended that Defendant Michael Aleman be dismissed from this action for lack of personal involvement in the alleged assault.[6]

**E.      Defendants Henry, Arroyos, And Carabajal Are Not Entitled To Qualified Immunity.**

Defendants contend that they are entitled to qualified immunity because Plaintiff has failed to create a fact question regarding whether their conduct violated his constitutional rights. (D.E. 34, at 8).  They also maintain that he has failed to show that their conduct was objectively unreasonable under the circumstances.  Id.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this burden, a plaintiff must satisfy a two-prong test."  Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005).  "First, he must claim that the defendants committed a constitutional violation under current law.  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  Id.

---

[6] Plaintiff may file a motion pursuant to Rule 15(a)(2) to add Julian Aleman as a defendant to this action.

(citations omitted).  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

## 1.    Step 1 – Constitutional violation.

To prevail on an excessive force claim,[7] Plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm.  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)); accord Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999) (citing Hudson).  The factors to be considered are "1. the extent of the injury suffered; 2. the need for application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any effort made to temper the severity of a forceful response."  Gomez, 163 F.3d at 923 (internal quotations and citation omitted).

In light of the vastly different accounts of the events forming the factual basis of this action, summary judgment cannot be entered in favor of Defendants Henry, Arroyos, and Carabajal regarding this analytical step.  Plaintiff claims that these three individuals used excessive force to restrain him even though he was not a threat to their safety.  As he alleges in his grievances and pleadings, the incident began after Defendant Arroyos sentenced him at the

---

[7] Although Plaintiff initially alleged that Defendant Arroyos failed to protect him from the excessive force by other officers, (D.E. 1, at 4), he clarified at the Spears hearing that this was an alternative argument to an excessive force claim because he was not sure whether Defendant Arroyos assaulted him.  More recently, he has declared in his response brief that Defendant Arroyos joined the other Defendants in brutalizing him.  (D.E. 37, at 2). Because Defendant Arroyos concedes that he used force to physically subdue Plaintiff during the incident, (D.E. 34-6, at 2), discussion of the failure to protect claim is omitted.

minor disciplinary hearing.  (D.E. 1, at 4; D.E. 34-1, at 3).  Although he acknowledged using an expletive to express his displeasure with the outcome, he insists that he did nothing to warrant any use of force.  (D.E. 34-1, at 3; D.E. 37, at 1).  He also emphasizes that Defendant Arroyos had already secured him with handcuffs before Defendant Henry slammed his face into the ground.  (D.E. 1, at 4; D.E. 34-1, at 3).  Plaintiff alleges that Defendants Henry and Arroyos then continued attacking him while he was on the ground, with Defendant Carabajal joining them shortly thereafter.  (D.E. 1, at 4; D.E. 34-1, at 3; D.E. 37, at 2).  During the assault, his pleas to stop were ignored and he heard Defendants laughing.  (D.E. 34-1, at 3; D.E. 37, at 2).  A fellow inmate working at A-Turnout named Alfonzo Wallace corroborates these factual assertions. (D.E. 38-1, at 1).

Defendants dispute Plaintiff's allegations.  In sharp contrast, they assert that Plaintiff became very upset at the disciplinary proceeding and delivered a close-fisted punch to Defendant Henry's shoulder or chest area.  (D.E. 34-6, at 2; D.E. 35-1, at 2).  In response, Defendants each grabbed one of Plaintiff's arms and pushed him to the ground.  (D.E. 34-6, at 2; D.E. 35-1, at 2). Once on the ground, Defendant Henry then applied hand restraints while Defendant Arroyos called for assistance.  (D.E. 34-6, at 2; D.E. 35-1, at 2).  Despite repeated orders to stop resisting, Plaintiff continued to issue verbal threats, twist his upper body to escape control, and kick at the officers with his legs.  (D.E. 34-6, at 2; D.E. 35-1, at 2).  When Defendant Carabajal arrived, he was able to pin down Plaintiff's legs and apply leg restraints.  (D.E. 34-6, at 2; D.E. 34-7, at 2; D.E. 35-1, at 2).  Only after Plaintiff's hands and legs were secured did the tussle end.  (D.E. 34-6, at 2; D.E. 34-7, at 2; D.E. 35-1, at 2).

16

Given these divergent narratives, there is a genuine issue of material fact as to whether Defendants Henry, Arroyos, and Carabajal used excessive force against Plaintiff.  Indeed, there are genuine fact issues implicated for almost every <u>Hudson</u> factor.  To start, the parties disagree on whether Plaintiff provoked the incident, when he was effectively restrained, and how much force was used against him.  These disputes directly relate to the second, third, fourth, and fifth <u>Hudson</u> factors, all of which concern the relationship between the threat posed by Plaintiff and Defendants' response to that apparent threat.  If, as Plaintiff asserts, he did nothing to provoke Defendants except use foul language and complain about being handled roughly, then there would have been no need to apply force whatsoever.  If, however, Defendants are to be believed, then the use of force was both necessary and not excessive to control an inmate who had just attacked a prison guard and was continuing to struggle mightily.  At the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  <u>Anderson</u>, 477 U.S. at 255.  Due to the existence of a genuine dispute over the material facts, adjudicating whether Defendants used excessive force <u>vel</u> <u>non</u> would necessarily involve crediting one party's version of the incident over the other, thereby encroaching on the province of the jury.

These genuine issues of material fact exist even though Defendants observe that "[t]he factual basis for the claims rests [sic] solely on Plaintiff's own conclusory allegations."  (D.E. 34, at 11).  The Supreme Court in <u>Lujan</u> recognized that "the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues."  497 U.S. at 888-89.  Plaintiff's pleadings and briefs, attested to "under penalty of

perjury" pursuant to 28 U.S.C. § 1746, are regarded as summary judgment evidence sufficient to raise a genuine issue of material fact, Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988), as is Plaintiff's Spears hearing testimony.  See Grimon v. Collins, 30 F.3d 1491, 1994 WL 398014, at *1 (5th Cir. July 18, 1994) (per curiam) (unpublished) (plaintiff's statements "given under penalty of perjury" at a Spears hearing rendered a later grant of summary judgment improper because the testimony raised a genuine issue of material fact) (citing Myles v. Garner, 20 F.3d 466, 1994 WL 121982 (5th Cir. Mar. 22, 1994) (per curiam) (unpublished)). Furthermore, Plaintiff provides the affidavit of a witness who disputes Defendants' version of events.  (D.E. 38-1, at 1).

　　As for the first factor, Plaintiff has alleged at the Spears hearing and in his written pleadings that he suffered injuries to his neck, back, arms, hands, an eye, and referred to a broken finger.  (D.E. 1, at 4; D.E. 37, at 2).  According to injury reports written by a nurse immediately after the altercation, however, Plaintiff only sustained a contusion and superficial abrasions to his right brow as well as superficial abrasions to his right upper lip.  (D.E. 34-2, at 16; D.E. 34-4, at 36).  Video footage recording the nurse's examination confirms that he suffered injuries to his face.  Although his back was examined, the nurse apparently did not deem any injury in that area worth noting.  In addition, photographs of Plaintiff's face and arms were taken.  These pictures again accord with the nurse's observations as noted in the medical reports and do not show any visible damage to his hands.  Rather than cite to any medical proof to substantiate his claim that he suffered lasting injuries to his neck, back, hands, and fingers, Plaintiff continues to rely solely on his averments and his oral Spears hearing testimony that he suffered more than just facial injuries.  (D.E. 1, at 4; D.E. 37, at 2).

18

Defendants maintain that these medical records "do[ ] more than mitigate [Plaintiff's] claims for damages; it utterly controverts them, leaving no genuine issue of material fact."  (D.E. 34, at 10).  They then conclude that these purportedly superficial facial injuries are de minimis and cannot support an Eighth Amendment claim.  Id. at 10 & n.44.

As an initial matter, there is conceptual distinction between the de minimis injury and a de minimis use of force.  See Wilkins v. Gaddy, __ U.S. __, 130 S. Ct. 1175, 1178 (2010) (per curiam) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."); Brown v. Lippard, 472 F.3d 384, 386 n.1 (5th Cir. 2006) ("The Supreme Court in *Hudson* was concerned with a *de minimis* use of force showing, not a *de minimis* injury.").  Although the Fifth Circuit has required plaintiffs to demonstrate that they suffered more than a de minimis injury as part of a threshold showing for excessive force claims on at least one occasion, see, e.g., Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997), conflicting Fifth Circuit precedent and a recent Supreme Court decision have rendered the continued recognition of such a requirement untenable.  See Wilkins, 130 S. Ct. at 1180 ("the District Court erred in dismissing [plaintiff's] complaint based on the supposedly *de minimis* nature of his injuries"); Brown, 472 F.3d at 386 (the Fifth Circuit "has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an excessive force claim"); Irby, 790 F. Supp. 2d at 559-60 ("Given the history of Fifth Circuit precedent, the nature of Wilkins, as well as its interpretation by other district courts in the Fifth Circuit, the de minimis standard ... is no longer good law....").  Therefore, Defendants' claim that Plaintiff's injuries are de minimis as a matter of law cannot be accepted as dispositive of his excessive force claim.

Moreover, the Supreme Court has made clear that the presence of even minor injuries do not relieve Defendants of liability for using excessive force.  See Wilkins, 130 S. Ct. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").  For Eighth Amendment purposes, evidence of the existence and extent of injuries are not dispositive. Instead, such information is considered in conjunction with the other Hudson factors in order to help determine whether the force used was excessive.  See Brown, 472 F.3d at 386-87 ("In evaluating excessive force claims, courts may look to the seriousness of the injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'") (quoting Whitley, 475 U.S. at 321).  But because there remain genuine issues of material fact relating to the other Hudson factors, it would be inappropriate to issue summary judgment on the entire excessive force claim even assuming arguendo that Defendants conclusively demonstrated that Plaintiff's injury was limited to those described in the medical records.

Finally, Defendants insist that in light of the relatively light injuries suffered by Plaintiff, "great effort ... must have been taken to temper the severity of Defendants' response" in compliance with the fifth Hudson factor.  (D.E. 34, at 11).  They also assert that "no lesser amount of force could possibly have been used to nullify the threat posed by an inmate on the attack."  Id.  This argument again improperly focuses on the extent of the injury rather than the extent and propriety of the force applied.  Furthermore, in the posture of a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255 (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)).  Because the absence of serious injury does not necessarily establish that Defendants tempered the severity of their force as a theoretical matter, the apparent lack of injury cannot be used to support an inference that Defendants took care to temper the severity of their force.  A ruling otherwise would undermine the Supreme Court's holding in <u>Wilkins</u>, which contemplated the possibility of a successful excessive force claim despite the lack of a serious injury.  130 S. Ct. at 1178-79.

Given the parties' irreconcilable descriptions of the underlying incident, summary judgment is not warranted.  <u>See</u> <u>Rankin v. Klevenhagen</u>, 5 F.3d 103, 108 (5th Cir. 1993) (where excessive force claim by inmate turns on choosing between dueling but plausible narratives by the plaintiff and defendant, disposition is "dependent on a fact-sensitive inquiry and credibility determinations" and "summary judgment is not a proper vehicle for the resolution of these disputed issues").  Defendants have simply failed to demonstrate that the application of the <u>Hudson</u> factors would not implicate a genuine issue of material fact.  Accordingly, it is respectfully recommended that, for the purposes of this summary judgment motion, Plaintiff has established that Defendants used excessive force against him.

**2.     Step 2 – Objective Reasonableness.**

Because Plaintiff meets his burden on the first step of the qualified immunity inquiry as to his excessive force claim against Defendants Henry, Arroyos, and Carabajal, it is necessary to examine the second.  At this juncture, a plaintiff must articulate the asserted constitutional right more specifically.  <u>Thompson v. Upshur County, Tex.</u>, 245 F.3d 447, 460 (5th Cir. 2001).  Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the

21

plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution." Id. (citation omitted).  For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Under the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603 (1999)).  Even officers who interpret the law mistakenly but reasonably are entitled to immunity.  See Creighton, 483 U.S. at 641.  The purpose of the "clearly established law" requirement is to avoid retroactive application of "newly created legal standards" to state actors who had no reason to know they were exposing themselves to liability.  Mouille v. City of Live Oak, Tex., 977 F.2d 924, 928 (5th Cir. 1992) (citing Harlow, 457 U.S. at 819).

To recapitulate, Plaintiff has alleged that he was already in handcuffs when Defendant Henry initiated the assault by driving him into the ground without warning, that Defendants Arroyos and Carabajal then joined the fray by assaulting him with their fists and feet, and that they did not stop even though he was not resisting.  Additionally, a prisoner's constitutional right to be free from the malicious and sadistic use of force was clearly established for purposes of the second prong of the qualified immunity analysis by the time the underlying incident occurred.  See, e.g., Hudson, 503 U.S. at 4 ("the use of excessive physical force against a prisoner may constitute cruel and unusual punishment").  Under the circumstances as described by Plaintiff, it

is manifest that a reasonable officer would have believed that the application of any force would have been unlawful.

Although Defendants disagree with Plaintiff and offer an alternative account of the events, it is for the jury to decide which party to believe. Because there is a genuine issue of material fact as to whether Defendants acted in an objectively reasonable manner, it is respectfully recommended that Plaintiff has satisfied his summary judgment burden on the second prong of the qualified immunity inquiry.

## VI.  RECOMMENDATION

For the aforementioned reasons, it is respectfully recommended that Defendants' motion for summary judgment, (D.E. 34), be granted in part and denied in part. Specifically, it is respectfully recommended that Plaintiff's claims against Defendants Jaqulyn Jameson and Michael Aleman be dismissed. It is further respectfully recommended that Plaintiff's excessive force claims against Defendants Jarrod Henry, Abram Arroyos, and Elias Carabajal proceed to trial on the merits.

Respectfully submitted this 1st day of May 2012.


BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).